# N. HOLMES & SONS v. BRIGGS & DRUM.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 6, 1889—Decided January 6, 1890.

[To be reported.]

1. In the absence of any special agreement to the contrary, the mere acceptance by a creditor from his debtor of the check of a third person to the creditor's order, for a pre-existing indebtedness, is not an absolute but a conditional payment, and the burden of proving such special agreement is on the debtor.

2. The facts that the creditor failed to give the debtor prompt notice of the dishonor of such a check, retained it in his possession, and collected on it a dividend out of the assigned estate of the drawer, do not raise any presumption that it was taken as absolute payment, but are exclusively for the consideration of the jury : Briggs v. Holmes, 118 Pa. 283.

3. When the debtor is not a party to such check, either as drawer, payee or indorser, he is not strictly entitled to notice of dishonor according to the law merchant ; and delay in giving such notice is not of itself a defence against his original liability, unless it be shown that he has actually sustained loss or damage in consequence thereof.

4. When the check of a third person, accepted as conditional payment of a pre-existing debt, has been dishonored, the creditor is not bound to return or tender the check to the debtor before bringing suit for the collection of the debt, the rule which governs in cases of rescission of contracts not being applicable.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 227 October Term 1889, Sup. Ct. ; court below, No. 237 September Term 1885, C. P. No. 1.

On July 2, 1885, John G. Holmes and others, partners doing business as N. Holmes & Sons, brought assumpsit against C. Q. Briggs and John Drum, partners as Briggs & Drum, to recover the amount of a draft drawn upon the defendants by Alexander & Co.

At the trial, on March 31, 1887, the jury under the peremptory instructions of the court rendered a verdict for the plaintiffs, and judgment was entered thereon. Upon a writ of error to No 139 October Term 1887, that judgment was rev— with a venire facias de novo: Briggs v. Holmes, 118

Charge of Court below.

At the second trial, on March 1, 1889, substantially the same facts were shown as upon the former trial.

W. H. Drum, called for defendants, testified in chief:

Q. I wish you would state now how you came to pay that draft by a cashier's check. A. I was notified some time previous to that by Holmes & Sons, by one of the clerks, that they would not accept our check in payment of drafts, that I would have to bring a cashier's check, and I did so. Q. Had you been lifting drafts through Holmes's Bank prior to that time? A. Yes, sir. . . . . Q. Now, you have stated that once you went down there with your own check? A. Yes, sir. . . . . Q. Do you think you have given us the substance of the conversation that occurred that day at Holmes & Sons, when you went down to lift the draft? A. Do you mean the one when I took our own check? Q. Yes, sir. A. He said, "I will take it this time, but I wont take it again; either have a certified check, or a cashier's check." . . . . Q. And after that you would take down a Penn Bank check and present it and lift the draft? A. Yes, sir. Q. And the checks went through the Clearing House and were paid? A. I suppose they were paid; I never heard anything from them.

At the close of the testimony, the court, SLAGLE, J., charged the jury:

This action is brought by Holmes & Sons against Briggs & Drum for the recovery of a certain amount of money due upon a draft sent to them for collection. The action is not directly upon this check, but for the money which is alleged to be due from Briggs & Drum upon a draft held at that time by Holmes & Sons. There is no dispute as to the fact that this draft was drawn by some person upon Briggs & Drum and sent to Holmes & Sons, who held it and had a right to receive the money. Nor is there any dispute that Briggs & Drum owed the money upon that draft. But they allege that it was paid, and that is the only question in this case for your determination. Was the draft paid? If it was not, then the plaintiffs are entitled to recover the balance remaining unpaid upon that draft, of which you will have a statement.

It is not alleged that this draft was paid in any other way the delivery to Holmes & Sons of the check which has

been shown to you. That check is what is called a cashier's check, of the Penn Bank; and it is used as the equivalent of a certified check, the banks sometimes certifying the check, sometimes taking up the check and giving a cashier's check instead of certifying; and it amounts to the same thing. It is an assumption, in other words, by the bank instead of the individual of the liability; but being the check of a third person, the presumption of law is that it is taken simply as a conditional payment, that is, if the check be paid, then the debt will be paid; if not, otherwise. This being the presumption in the case, when the plaintiffs rested, after having shown the fact that this draft was held by Holmes & Sons, and Briggs & Drum had been called upon for payment and had delivered to them this dishonored check and taken up the draft, there was nothing in the case to show payment under the law, the presumption being that that check was taken as conditional and not as absolute payment. [Therefore, the burden of proof was upon the defendant to show that that check was given by Briggs & Drum and accepted by Holmes & Sons as payment; and if so, then your verdict should be for defendants. That is the only question in this case, and that is a question of fact. It is a question of the intention of the parties. When this check was delivered over to Holmes & Sons, did Briggs & Drum intend to give it, and Holmes & Sons to receive it, as payment of the indebtedness that they then owed? You have all the facts connected with the matter in evidence, and from them you must find that the weight of evidence is that it was accepted by Holmes & Sons as payment, and that they did not intend further to look to Briggs & Drum, but took this check of the Penn Bank in payment and satisfaction of their obligation.] [3] I do not propose to go over the testimony in this case. You have the testimony of Mr. Drum as to what occurred in relation to this matter when he presented a check to Holmes & Sons in payment of a preceding draft. He states that after that it was their universal custom to pay all drafts at Holmes & Sons with checks similar to this; that they were received by them, and there was never any question about them, because, the Penn Bank remaining good, he presumed they had all been paid, at least they had never heard anything more about them, but that they did, from that time on, receive these checks in this way, and delivered up the drafts which they held.

Charge of Court below.

You will take the circumstances and the language used, as far as you can gather it, and say whether or not it was to be payment, or simply conditional payment; that is, absolute payment, or simply conditional payment. The word "absolute," of course, was not used; but the word "payment" was used. That is not necessarily absolute or conditional, but it may be determined by you from the circumstances, whether it was intended to be absolute payment. If so, then as I say, your verdict should be for the defendants.

There is another fact in the case; that is, that after this check was dishonored by the Penn Bank, it was held for some time by Holmes & Sons without any demand upon Briggs & Drum for the payment of it. That is a fact which you have a right to consider in connection with the other circumstances in the case. That alone perhaps might not have much weight with you, but you will take it in connection with the testimony of Mr. Drum as to what was said and what was done after the conversation in relation to how these things should be paid. There is another fact that has been referred to; and that is, the presentation of this check to the assignee of the Penn Bank by Holmes & Sons, and their receiving a dividend upon it. That is a fact that you will consider along with the others, but in my judgment it has very little bearing, because, as stated by counsel, if they went to Briggs & Drum to have this matter settled, and it was not settled, and they still held possession of the check, it was their duty to the defendants, if they were going to hold them liable, to present it and get what they could out of it. I do not think there is much in that particular fact. However, that is all for you. But you must be satisfied from all the circumstances that this check was received by Holmes & Sons as payment.

Defendants' counsel have asked me to instruct you:

1. That the acceptance by plaintiffs from defendants of the cashier's check of Penn Bank, drawn to plaintiffs' order, for the amount of the draft of Alexander & Co., and the delivery to defendants of the said draft, followed by failure on the part of plaintiffs to notify defendants of the dishonor of said cashier's check, and the retention of said check until the present time, and collection of dividends on account thereof, is a bar to the plaintiffs' right to recover in this suit.

Answer: Refused. The facts therein stated are for your consideration upon the question of the understanding between the parties.[1]

4. That the failure on the part of Holmes & Sons to give notice to Briggs & Drum of the non-payment of said cashier's check, and their retaining possession of said check without offer to surrender same until the present date, and collecting dividends thereon from the assignee of the Penn Bank, raise a sufficiently strong presumption that said check was accepted as absolute payment of the draft, to justify the jury in finding a verdict for defendants.

Answer: Refused. The effect of the testimony is for you and not for the court.[2]

—Subsequently, the jury having asked for the further instructions, the court replied to their request as follows:

You ask me whether or not a cashier's check is money, or so considered from a legal point of view. It is not so considered. That is what was decided by the Supreme Court in this case when it was before them, after having been tried in this court. [The question for you to determine is, whether or not Holmes & Sons agreed to accept it as money, as payment. That is the question of fact for you to determine. It is entirely for you to say from all the evidence, whether or not Briggs & Drum gave it to them and they accepted it as money, as payment; and I cannot make it any clearer.] [4]

The verdict of the jury was in favor of the plaintiffs for $2,541.31. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this appeal, assigning for error:

1, 2. The answers to defendants' points.[1][2]

3, 4. The parts of the charge embraced in [ ] [3][4]

*Mr. J. McF. Carpenter*, for the appellants:

1. The admitted facts are a complete bar to the present action. The direction to pay with the cashier's check came from Holmes & Sons. They knew precisely what this meant, and that when the check was issued by the Penn Bank to them they became creditors of the bank for the amount represented by it. Their failure to notify Briggs & Drum of the

non-payment of the check, their retention of it until the present, and their using and treating it as their own in settlement of the Penn Bank's affairs, show conclusively that they had no idea that Briggs & Drum were liable to them. Having elected to substitute the Penn Bank for Briggs & Drum they should be held to their election.

2. The plaintiffs do not claim that the check was given as collateral security; their only claim is that it was conditional payment. Therefore the present action must fail; for, even if they have the legal right to call upon the defendants to pay a second time, they cannot do so till they return or offer to return the check: Estabrook v. Swett, 116 Mass. 303 ; Kimball v. Cunningham, 4 Mass. 502; Conner v. Henderson, 15 Mass. 319 ; Pearsoll v. Chapin, 44 Pa. 9 ; Roberts v. Fisher, 65 Barb. 303 ; Beetem v. Burkholder, 69 Pa. 253 ; Summers v. Ritchie, 30 Pa. 147; Mason v Bovet, 1 Den. 73 ; Bickford v. First N. Bank, 42 Ill. 238 (89 Am. Dec. 436). Further; the failure of the plaintiffs to give notice of the dishonor of the check is sufficient to defeat their claim, without regard to whether loss resulted or not: Gloucester Bank v. Bank, 17 Mass. 45 ; Raymond v. Baar, 13 S. & R. 318; Smith v. Mercer, L. R. 3 Exch. 51. In the absence of evidence, the law presumes loss: Gloucester Bank v. Bank, supra ; Coolidge v. Brigham, 1 Metc. 547.

3. Our fourth point should have been affirmed. The admitted facts recited in it were sufficient to justify a finding for the defendants. The intent may be deduced from circumstances by the jury: Hart v. Boller, 15 S. & R. 162 ; Mason v. Wickersham, 4 W. & S. 100. The court erred in confining the jury to the single question whether the cashier's check was accepted as payment, and instructing them that the burden of proof that it was so received was on the defendants. This presentation of the case was calculated to mislead the jury. They were told that the failure to demand payment, and the collection of dividends, had little weight, but there were no instructions, except as embodied in the points and answers, respecting the effect of the failure to give notice of dishonor and to surrender the check.

*Mr. George B. Gordon* (with him *Mr. John Dalzell* and *Mr. William Scott*), for the appellees :

Opinion of the Court.

1. The same points were presented by the defendants when this case was here before, and the opinion then rendered by this court is conclusive in this argument. Upon the question as to notice of the dishonor of the cashier's check, we refer the court to the authorities cited by us in Briggs v. Holmes, 118 Pa. 283.

2. The argument that we must return the check, based on authorities relating to the rescission of contracts, is a non sequitur. We are not seeking to rescind any contract. Moreover, what status quo is there to restore? Everything is in the same situation; if there was money in the Penn Bank, it is there still.

3. The defendants got credit for the dividend which we, as holders of the check, collected on it after their refusal to pay. The defendant's fourth point was rightly refused; it was not a question of presumptions, but of facts to be found by the jury. The charge of the court was unexceptionable, and exactly as this court directed.

OPINION, MR. JUSTICE STERRETT:

When this case was here before, the judgment was reversed and a new venire ordered, solely because the learned president of the Common Pleas refused to submit to the jury the question, whether the cashier's check was received as absolute payment of the Alexander & Co. draft, and directed them to find for plaintiffs. The facts sufficiently appear in the case as reported in 118 Pa. 283. On the last trial the question referred to was fairly submitted to the jury, and they, in effect, found that the check was accepted, not as absolute but as conditional payment of the draft. That finding of fact virtually left the defendants without any available ground of defence.

There was no error in refusing to charge as requested in defendants' first point, viz.: " That the acceptance by plaintiffs from defendants of the cashier's check of Penn Bank, drawn to plaintiffs' order, for the amount of the draft of Alexander & Co., and the delivery to defendants of said draft, followed by failure on the part of plaintiffs to notify defendants of the dishonor of said cashier's check, and the retention of said check until the present time, and collection of dividends on account thereof, is a bar to plaintiffs' right to recover in this suit."

In saying to the jury that the facts recited in that point were for their consideration in determining the question submitted to them, the learned judge went as far as he was warranted in doing. Nothing is better settled than that, in the absence of any special agreement to the contrary, the mere acceptance, by a creditor from his debtor, of the note or check of a third person, to the creditor's order, for a pre-existing indebtedness, is not absolute but merely conditional payment, defeasible on the dishonor or non-payment of the note or check, and, in that event, the debtor remains liable for his original debt: McGinn v. Holmes, 2 W. 121; McIntyre v. Kennedy, 29 Pa. 448; Brown v. Scott, 51 Pa. 357; League v. Waring, 85 Pa. 244; Hunter v. Moul, 98 Pa. 13; Canonsburg Iron Co. v. Union N. Bank, 34 Pittsb. L. J. 93; Benj. on Sales, §§ 1082, 1083; 2 Pars. on Notes & B., 184, 185. The evidence of defendants tending to show that the check was received as absolute payment of the draft was submitted to the jury, but their finding was in favor of plaintiffs.

Defendants' fourth point was rightly refused. The facts therein recited were exclusively for the consideration of the jury, to whom they were properly submitted.

In view of the evidence, there is no error in the portions of the charge covered by the third and fourth specifications. It is contended that the learned judge erred in confining the jury to the consideration of the single question, "Was the check given and received as money?" and in charging that the burden of proving it was so received was on defendants. As to the burden of proof, he was clearly right. The question of fact, to which the attention of the jury was specially directed, was the only issue presented by the evidence. If there had been any testimony tending to show that defendants were in any way injured by the failure of plaintiffs to promptly give notice of non-payment of the check, etc., it would have been error to have excluded it from the consideration of the jury; but there was none. The defendants were not parties to the check, either as drawers, payees, or indorsers. According to the law merchant, they were not strictly entitled to notice of dishonor, and have no just reason to complain of delay in giving them notice, unless they were prepared to show that they had actually sustained loss or damage by the omission of plaintiffs to notify them : Benj. on Sales,

supra; Hunter v. Moul, supra; 2 Pars. on Notes & B., 184. It is there said: "If paper be transferred, by delivery only, as security for a pre-existing debt, and it is dishonored while in the transferee's hands, it affects in no way the debt it was intended to secure. The original liability remains what it was; and upon dishonor of the paper, it was not even necessary to give him notice thereof as an indorser. The authorities are somewhat confused on that point; but the rule of law is, undoubtedly, that the debtor is not entitled to any technical notice, but may show, in defence, any injury he has sustained by the actual laches of the creditor."

We fail to discover any error in the trial of which appellants have any just reason to complain. Neither of the specifications of error is sustained.

Judgment affirmed.