Simpson, Appellant, *v.* Equitable Life Assurance
Society of the United States.

Argued April 29, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*Oliver K. Eaton,* with him *Ralph J. McAllister* and *Paul
W. McAllister,* of *McAllister & McAllister,* for appel-
lant.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* with
him *Karl W. Warmcastle* and *Charles A. Woods, Jr.,*
for appellee.

OPINION BY BALDRIGE, J., July 15, 1937:

This action in assumpsit was brought by a beneficiary
of an annuity policy issued by defendant, to recover
the periodical payments alleged to be due thereunder.
The trial judge granted a compulsory nonsuit and re-
fused a motion to take it off. This appeal followed.

Robert J. Simpson made a written application to
the defendant, through Welday, a subagent, for a $5,-
000 single premium annuity policy, payable in annual

installments of $341.20 for life, and, in case of his death prior to the payment of $5,000, the balance was to be paid to the plaintiff in yearly installments.

Simpson, the annuitant, paid $5,000 to the subagent, who forwarded the application to the Edward A. Woods Company, defendant's general agent, who in turn, sent it to defendant. A policy, dated November 12, 1928, was issued and transmitted to the general agent who gave it to the subagent, and he delivered it to the annuitant, but did not remit the premium to the general agent or the defendant. On January 7, 1929, the annuitant surrendered possession of the policy to Welday for the purpose of having it reissued as of a later date in order to increase the amount of the annual payments. Welday returned it to the general agent, who, in turn, forwarded it to the defendant, together with an application for a new policy. The first contract was marked cancelled and a new policy was delivered to the annuitant, dated March 23, 1929, identical in form with the first policy, except as to the amount of the annual payment and the date payable. This same proceeding was successively followed, and three additional re-dated policies were issued.

On January 27, 1930, the annuitant delivered the last of the several policies to the subagent, who gave him a receipt therefor, which stated: "to be re-dated Feb. 25, 1930—Age 53¼." This policy, as formerly, was sent to the general agent and forwarded by it to defendant, who, on January 30, 1930, marked it cancelled, but did not issue a new policy. The general agent's record was marked "N. T. O." (not taken out). When the subagent failed to deliver a new policy or return the old one, the annuitant, upon inquiry, learned that the subagent had not paid the premium to defendant, but had used the money for his own purposes. The subagent then gave the annuitant a judgment note for $5,000. The annuitant died August 26, 1930, and this

note was later found among his papers. The plaintiff testified that a few weeks thereafter "I took the note to Mr. Welday and asked him what he was going to do about it and he told me nothing could be done, that if I told on him, I would only be hurting him and I wouldn't be able to get my money from the Insurance Company, but he would pay me." Welday then gave her a new note, including interest, amounting in all to $5,226.52, which was entered October 23, 1933. Execution was issued against the property of Welday by a holder of a prior lien. The plaintiff filed a petition to have the proceeds of the sale marshalled, and on distribution thereof she received $367.20 on account of her judgment.

Where an insurance company entrusts its agent with a policy for delivery to an insured, and the latter, relying on the agent's authority or apparent authority, pays the premium to him, this is equivalent to a payment to the insurer and it cannot be heard to say that its agent did not have authority to collect the money. In *Transcontinental Oil Co. et al. v. Atlas Assurance Co., Ltd.,* 278 Pa. 558, 564, 123 A. 497, the Supreme Court said: " ...... the giving of possession of an executed policy to an agent naturally invites the payment of the premium to him, a consequence which the company must be held to have contemplated: *Gosch v. Firemen's Ins. Co.,* supra, [33 Pa. Superior Ct. 496]. This has been frequently held in Pennsylvania, and liability imposed, where it appeared the insurance contract was placed in the hands of the agent or broker, to whom the consideration called for was given: *Peretzman v. Ins. Co.,* 258 Pa. 319 [102 A. 22]; *Riley v. Ins. Co.,* 110 Pa. 144 [1 A. 528]; *Lebanon Mut. Ins. Co. v. Erb,* 112 Pa. 149 [4 A. 8]; *Arthurholt v. Susquehanna Mut. Fire Ins. Co.,* 159 Pa. 1 [28 A. 197]." See also, *Walker & Kavanaugh v. Ins. Co.,* 175 Pa. 345, 34 A. 736. In Restatement, Agency, §71, it is stated: "Unless otherwise agreed, authority to receive

payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it." This rule applies where the premium is paid before delivery of the policy: *Riley v. Com. Mutual Fire Ins. Co.*, supra.

Here, undoubtedly, a binding contract was originally created. Was it discharged when the policy was returned to the insurer and marked cancelled?

The only purpose disclosed on January 7, 1929, when the policy was delivered to the subagent, was that it was to be forwarded to the home office for re-dating, thus giving the annuitant, who, on this latter date, would be of advanced age, an increased annuity. No part of the premium paid by the annuitant was returned, nor was anything said or done which indicated an intent other than that the contract surrendered was to remain in full force and effect until a new policy was received. A rescission of a contract must be based on a sufficient consideration: Restatement, Contracts, §406. Here, the only consideration was the execution and delivery of a new policy. As this was not done, the consideration failed and the defendant's liability continued under the policy.

There is the further question whether plaintiff, in entering judgment against Welday and receiving her distributive share of the funds realized from the sale of his property, is barred from bringing this action. The trial judge held that she was. In granting the nonsuit, he stated that she had to elect whether she would bring her action against the insurance company on the contract or pursue Welday, individually, on his note; that both remedies were not open to her. This position, we think, was wrong. True, plaintiff is not entitled to a double recovery, but obtaining from Welday, individually, part of the money due under the contract only reduced the defendant's obligation. This was not a

detriment to defendant, but a benefit, and did not estop plaintiff from asserting her right under the contract. It well may be, under the circumstances present, that a jury would determine that the acceptance of the note from Welday, in view of his conduct and the position in which he placed plaintiff, was in the nature of collateral security to give her additional protection. The remedies, in our view, were concurrent; each was different as to form, parties, and facts. The proof necessary to support a recovery on the note did not coincide with that required in this action: 20 C. J. §8, p. 11. The plaintiff, therefore, could prosecute one or both remedies until satisfaction was had: 20 C. J. §7, p. 6.

Furthermore, there was evidence presented that would justify the conclusion by a jury that plaintiff was in ignorance of her rights or her remedies. It is only where one deliberately, and with full knowledge of the facts, seeks a remedy, inconsistent with another, that he is deprived of the benefit of the other. A supposed election made by one under a mistake of facts, or a misconception as to his rights is not binding: 20 C. J. §29, p. 37. Consequently, to constitute an election in this case, the plaintiff, at the time the alleged election was made, must have had knowledge of the facts from which her remedial rights arose. Any position taken by her before she knew all the facts was a mistake and not an election: 20 C. J. §28, p. 35. See, also, *Egan, Admr., v. United Gas Imp. Co.,* 319 Pa. 17, 178 A. 683; 9 R. C. L. §8, p. 962.

It was error to hold as a matter of law that there was an election by the plaintiff that barred this action.

While the case is close, we think there is enough in the record to require defendant to introduce its evidence.

Judgment is reversed with a procedendo.