Nuside Metal Products, Inc. *v.* Eazor Express,
Inc., Appellant.

Argued April 13, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Philip E. Brockway*, with him *Chauncey E. Brockway*, and *Brockway and Brockway*, for appellant.

*William J. Joyce*, with him *Martin E. Cusick*, and *Weisen, Cusick, Madden, Joyce, Acker and McKay*, for appellee.

OPINION BY WRIGHT, J., June 10, 1959:

Nuside Metal Products instituted an action in assumpsit against Eazor Express to recover the purchase price of two shipments of steel delivered to the defendant by the plaintiff under c.o.d. agreements. Defendant filed a motion for judgment on the pleadings which was denied. The case was tried before Judge MCKAY without a jury, and an adjudication was subsequently entered ordering the entry of judgment in favor of the plaintiff. Defendant's exceptions to the adjudication were dismissed and final judgment entered. The defendant has appealed. The factual situation, concern-

ing which there is no dispute, appears in the following excerpt from the adjudication:

"The action is in assumpsit to recover the purchase price of two c.o.d. shipments of steel delivered to the defendant by the plaintiff under a c.o.d. agreement. The defendant in turn delivered the shipments to another carrier, which collected the purchase prices from the consignees and remitted the proceeds directly to the plaintiff by two checks which were subsequently dishonored.

"The purchase prices of the shipments were $1171.50 and $490.00, respectively. The connecting carrier was the Albrent Freight and Storage Corporation. Its successor was the Clintonville Transfer Lines, Inc. A Receiver in bankruptcy was appointed for both companies on July 26, 1955. The checks of the Albrent Freight and Storage Corporation covering the two collections were received by the plaintiff on the 27th or 28th of July, 1955 and deposited at the McDowell National Bank, Sharon, Pennsylvania on July 28, 1955.

"Subsequently, but prior to September 27, 1955, the defendant learned of the bankruptcy and also that the checks had been dishonored. On that date, September 27, 1955, the traffic manager of the defendant company wrote to the plaintiff referring to the bankruptcy of the connecting carrier, advising the plaintiff that money collected by carriers for other persons does not belong to them and suggesting that the plaintiff demand immediate payment from the receiver in bankruptcy.

"On or about September 30, 1955, the plaintiff filed a proof of claim against the estate of the connecting carrier corporation. In June, 1956, the plaintiff made formal demand upon the defendant for payment of its claim. In January, 1957, the plaintiff was informed that its claim was classified by the receiver among the

claims of general creditors. At the time the present action was brought, no distribution had been made".

Appellant's first contention is that the lower court erred "in deciding that the plaintiff's act of accepting checks and filing a claim in bankruptcy did not constitute a waiver of its right to bring this present action". It is appellant's position that appellee's conduct created a debtor-creditor relationship with the connecting carrier, thus invalidating the relationship which had been created by the c.o.d. contract. Principal reliance is placed on *Channing v. Riddle Aviation Co.*, 10 Federal Carrier, Section 80,888, at page 2093, holding that the conduct of the shipper therein constituted a ratification of an improper act by the carrier and barred the shipper from proceeding under the c.o.d. contract. The *Channing* case is distinguishable on the ground that the carrier there accepted a check from the consignee instead of cash. The consignee's check was delivered to and deposited by the consignor. When payment of the check was stopped, the consignor brought suit against the carrier. It was held that the consignor, by accepting the check, ratified the carrier's wrongful act in failing to collect cash from the consignee. In the instant case the connecting carrier performed the terms of the c.o.d. contract by collecting the price of the shipments from the consignees in cash. The acceptance of checks from the connecting carrier was not a ratification of any act in violation of the c.o.d. contract. The delivery of the checks constituted not an absolute but merely a conditional payment, and the acceptance of them did not release from liability either the person giving the checks, or any other person liable for the debt, if the debt was not in fact paid: *Gerrard Company of Philadelphia v. Tradesmen's Bank*, 318 Pa. 100, 177 A. 760. And see *Holmes v. Briggs*, 131 Pa. 233, 18 A. 928.

Appellant also cites 18 Am. Jur., Election of Remedies, Section 12, to the following effect: "Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts or where the one is founded upon the affirmance, and the other upon the disaffirmance, of a voidable transaction". Such a situation may exist where a bailor has the right either to sue upon a note or to recover the property leased, in which event the exercise of either remedy acts as a waiver of the other: *Road Roller Co. v. Schlimme,* 220 Pa. 413, 69 A. 867; *Jacob v. Groff,* 19 Pa. Superior Ct. 144. However, in order to have the selection of one remedy operate as a bar to the pursuit of the other, or to compel an election between remedies, it must appear that the remedies sought to be enforced are inconsistent, and not merely cumulative: *Harper v. Quinlan,* 159 Pa. Superior Ct. 367, 48 A. 2d 113. See also *Messmore's Estate,* 290 Pa. 107, 138 A. 81. As a general rule, a party may have as many remedies as the law gives provided they are consistent. Moreover, the doctrine of election between inconsistent remedies against a defendant does not generally apply to an attempted enforcement of allegedly inconsistent causes of action against different persons: *Sheriff v. Eisele,* 381 Pa. 33, 112 A. 2d 165. Thus, in *Clark v. Wilder,* 25 Pa. 314, it was held that the pendency of a suit against a common carrier for the value of goods destroyed by fire in a warehouse in the course of shipment was not a bar to a recovery from the warehouseman of the amount of insurance received by him on account of such goods. Again, in *Walter v. Graham,* 80 Pa. Superior Ct. 518, the fact that the plaintiff had already recovered from a common carrier for damage to goods in transit was held not to be a waiver of his claim against one who had undertaken to crate and

load the goods in a proper manner. See also *Simpson v. Equitable Life Assurance Society*, 127 Pa. Superior Ct. 386, 193 A. 309.

We conclude, as did the court below, that appellant and its connecting carrier each became liable to appellee for the failure to reimburse it for the prices of the two shipments which had been collected by the connecting carrier from the consignees. Appellee had the right to proceed first against the connecting carrier, which it did by filing a claim with the receiver in bankruptcy. It is significant that this was done at appellant's suggestion. Such action did not preclude appellee from subsequently proceeding against appellant in the present suit. Appellee did not thereby assume inconsistent positions. Neither action affirms facts which the other disaffirms. While appellee is not entitled to a double recovery, any amount collected from the connecting carrier in the bankruptcy proceeding would merely go to the reduction of the appellant's obligation.

Appellant's second contention is that the lower court erred "in holding that the nine (9) month limitation for filing claims, set forth in the bill of lading, did not apply to the plaintiff's action in the instant case". The pertinent provisions of the bill of lading are set forth in the footnote.[1]

---

[1] "Sec. 1. (a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided . . .

"Sec. 2. . . . (b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred, within nine months after delivery of the property . . . Where claims are not filed . . . in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid".

It is important to note that a carrier handling a c.o.d. shipment acts in a dual capacity. The carrier is not only a bailee to transport the goods, but also an agent to collect the price thereof. The carrier's liability for proper transportation does not arise from contract, but is cast upon it by the common law: *Robinson Electrical Co. v. Capitol Trucking Corp.*, 168 Pa. Superior Ct. 430, 79 A. 2d 123. The carrier's liability as agent to collect the price of the goods, however, is a matter of contract. "When a carrier makes a contract to collect on delivery, it stands with reference to it just as any other agent, and is bound to a strict compliance with its undertaking": 13 C.J.S., Carriers, Section 186. See also 9 Am. Jur., Carriers, Section 648. A collection agency undertaking the collection of an item is liable for the negligence or default of a subagent to whom the duty to collect is delegated: *Bradstreet v. Everson*, 72 Pa. 124; *Morgan v. Tener*, 83 Pa. 305.

It is our view that the limitation in Section 2(b) of the bill of lading applies only to claims involving the carrier's common law liability for property loss or damage, and that it has no application to a claim, as in the instant case, to recover money collected under a c.o.d. agreement. Section 1(a) expressly provides that the liability of the carrier shall be as at common law. The condition precedent to recovery set forth in Section 2(b) necessarily relates to recovery for the carrier's common law liability. As already noted, the c.o.d. contract is separate and apart from the contract of carriage, and is not a duty imposed by common law. Consequently, a claim for payment over of money collected on a c.o.d. shipment does not come within the limitation provision in the bill of lading. This is the rule in other jurisdictions. See *Anthony v. American Rwy. Express Co.*, 188 N. C. 407, 124 S.E. 753; *Mc-*

*Nichol v. Pacific Express Co.*, 12 Mo. App. 401; 9 Am. Jur., Carriers, Section 656; 13 C.J.S., Carriers, Section 186. Appellant relies upon *Blaisdell v. American Express Co.*, 56 N. D. 870, 220 N.W. 634, but suit in that case was on the ground of conversion of the goods. Appellant also cites *Concordia Silk Hosiery Co. v. Pa. R. R. Co.*, 69 Pa. Superior Ct. 361. However, that case is not controlling since the claim there under consideration was based upon the carrier's common law liability.

Judgment affirmed.