# Shalter and Ebling's Appeal.

*Sureties of Administrator improperly appointed.—Liability of.—Informal Administration Bond, validity of.—Sale after Time fixed in Will valid.—Liability of Sureties to Legatees for Interest.*

1. Though an administrator *de bonis non cum testamento annexo* be improperly appointed, yet if he act under the letters granted to him he and his sureties are liable on their bond to the parties interested in the estate.

2. Though the bond given was in the form of an original administration bond in cases of intestacy, yet the sureties are liable for proceeds of the real estate of the testator sold by the administrator as directed in the will for which he had failed to account.

3. Where the testator directed a public sale of his real estate by his executors, " so that it be within one year" after his decease, the sale by the administrator

after the expiration of the year was as effectual as if it had been done by the executors, who had power to sell after the year, the condition being directory only and not a condition precedent.

4. The sureties were liable for a balance of interest due a daughter of testator, whose share was directed to be charged on the real estate sold, which interest the administrator had received, but had not paid over.

APPEAL from the Orphans' Court of *Berks county.*

This was an appeal by Francis B. Shalter and Jacob S. Ebling, who were trustees in the administration bond of George Fox, administrator *de bonis non cum testamento* of John Miller, deceased; from the decree of the Orphans' Court directing said Fox to pay to Susanna Maurer $446.16, the accrued interest on the sum of $1433.69, which was adjudged to be in his hands for her use during life.

The case was this:—On the 12th day of September 1836, John Miller, late of Cumru township, Berks county, made his will, proved November 21st 1836, of which he appointed his sons John and Elijah Miller and his brother Sebastian Miller the executors, and to whom letters testamentary were granted.

By his will testator directed his personal property to be sold for the payment of his debts, and devised to his wife for life the house in which they lived, and one-third of the rents, issues, and profits of such of his lands and tenements as should be directed not to be sold by his executors; he then directed that his lands directed not to be sold should be valued and appraised, after his youngest son Reuben had attained his majority, and from thence his wife was to receive the interest of one-third of the valuation-money; he directed an equal division to be made of his whole estate amongst his seven children and their representatives, except William's children, who were to receive only half. as much as testator's other children. The testator further directed as follows: In regard to the share coming to my son Benjamin, my will is that the whole of it remain in the lands to be valued, and he to receive yearly interest arising therefrom for his maintenance and support, the principal to go to his heirs, if he have any, and if none, to his brothers and sisters and their heirs and representatives, William's children again only to receive one-half of a share as before stated. And in regard to the share of my daughter Susanna, intermarried with John Maurer, I order and direct that it remain in like manner charged upon my lands and tenements, the yearly interest thereof to be paid to her, or to her order, during her life, and after her death the principal to be paid to her children or their legal representatives.

The testator then directed that when Reuben attained his age of twenty-one years, all his lands not to be sold should be appraised and valued by seven men, and directed how they should be chosen, and that they might be accepted and refused as though he

had died intestate, subject however to all the regulations and provisions that I have hereinbefore made respecting them. " These lands are, the farm at the spring with the tannery on it; the thirty-two acres just above the spring; the storehouse occupied by my son Elijah; the tract of .chestnut land which I own with Michael Ruth; and the other tract that joins Adam Spohn's land, and the hill land above Hannes Young's."

He then ordered " all the rest of his real estate to be sold at public sale by his executors, as soon after his decease as may be according to their best discretion, so that it be ' done within one year after his decease,' empowering them to make conveyances therefor ;" and further he directed that, " In regard to the real estate left to, my beloved wife, as above stated, my will is that after her decease the same be disposed of among my children and their representatives, according to the same principle and provision as I have laid down relative to the disposition of my other real estate that is not to be sold by my executors."

In 1837, and within a year from the death of the said testator, the executors sold to Jacob Rollman, a tavern stand and several tracts of land, under the authority given by said will, for the sum of $2850.

The inventory of the personal estate was filed December 17th 1836, and amounted to $15,423.97. Elijah Miller, one of the executors, filed his account, which was audited, on the 9th day of November 1839, showing a balance of $2777.17 in his hands, including proceeds of said sale to Jacob Rollman.

Sebastian Miller, another of the executors, filed his account on the 8th day of November, A. D. 1838, in the register's office, showing a balance of $467 due to him, which account was confirmed January 11th, A. D. 1839, and he was discharged April 5th 1839.

It does not appear that Elijah Miller and John Miller, the other executors, were ever discharged by the court, although they acted as executors, and received moneys belonging to the estate. John Miller never rendered an account of his administration of the estate.

On the 9th November 1839, the register, in his minutes, has this entry : " John Miller, Elijah Miller, and Sebastian Miller, having renounced."

Same day, letters of administration on the goods, chattels, and credits of said deceased unadministered, with his will annexed, were granted by the register to George Fox, who, with Francis B. Shalter and Jacob S. Ebling as his sureties, entered into a bond in the common form of an original administration bond in case of intestacy to the Commonwealth in the sum of $20,000.

Partition and valuation were made in the Orphans' Court of the real estate directed to be appraised, and six tracts thereof not

having been accepted at the valuation, the Orphans' Court, on the 11th day of November 1839, granted to George Fox, as administrator, with the will annexed, &c., an order to sell said tracts, which he accordingly did on the 30th November 1839, for $18,076.97, subject to the widow's third, and subject also to the shares of Benjamin Miller and Susanna Maurer in said purchase-money.

In 1840, said George Fox, as administrator, with the will annexed of said John Miller, deceased, without any order from the said court, sold certain other of the real estate of said deceased, directed in and by said will to be sold by the executors thereof, as follows: five purparts for various sums, in all amounting to $2347, and delivered to the purchasers deeds for the same. He also, as administrator as aforesaid, received of the goods, chattels, and credits of said estate, according to his accounts filed and confirmed by the court, the sum of $5857.53, and paid debts and expenses of administration to the amount of $5414.08, leaving in his hands, of the personal estate, the sum of $443.45.

In 1856, he left his home in the county of Berks. On the 31st day of May of the same year, Susanna Maurer presented to the Orphans' Court of Berks county her petition for a citation, which was awarded, returnable August 8th 1856, and was served on the appellants. The petitioner claimed that under a report of auditor upon the account of said George Fox as administrator as aforesaid, she was entitled to the annual interest, during her life, on $1433.69, under the will of her father, the said John Miller, deceased; that the interest up to April 1st 1856 was $516.12, and that George Fox had paid to her on account $242.02, leaving due to her $274.10, and praying an order on him to pay her that money, and in default thereof that an execution be awarded.

August 2d 1856, appellants answered this petition.

February 28th 1857, Susanna Maurer presented another petition to the court, praying an order on said George Fox for payment of said sum of $274.10, and after reciting the will of said testator, and (*inter alia*) the directions therein, that the share of his daughter, the said Susanna Maurer, in his estate, should remain charged upon his lands and tenements, the yearly interest thereof to be paid to her, or her order, during her life, and after her death the principal to be paid to her children or to their legal representatives, the petitioner proceeded to state that said George Fox, as administrator as aforesaid, under and by authority of said will, sold divers tracts of land to divers individuals, naming them and the several sums of money payable by each of them, and amounting to the sum of $2347; and that, according to said last will and testament, her share in the purchase-money of said real estate was to remain charged on the same, and the yearly

interest thereof was to be paid to her annually during her natural life, and the principal at her death to her children or their legal representatives; and further that of the interest thus directed to remain charged on said real estate, and to be paid to her, there was due and unpaid to her, on the 1st day of April 1856, the said sum of $274.10; and praying the court to grant a citation to said George Fox and to the purchasers and owners of said lands, to wit, George Ruth, John Haas, John Yost, Benjamin Wartman, Peter Zimmerman, and George Kindy, to appear and show cause why an order and decree should not be made that said George Fox should pay said money to petitioner, and requiring said George Ruth and other purchasers and owners of said lands to show cause why an order and decree should not be made by said court that they pay to petitioner the said sum of $274.10, in the manner and proportions which the court should deem just and right, and in default of such payment to show cause why an order and decree should not be made to raise said sum of money by a sale of said lands or such parts or portions thereof as to the court should appear to be sufficient, just, and equitable: praying also that said citation might also be served upon the appellants. A citation hereupon was awarded and served upon appellants and said purchasers of lands, returnable April 17th 1857, when the court ordered that the answers put in by appellants to first citation should be taken as an answer to this also.

There were several points presented to the court below and here, in answer to the petition of Mrs. Maurer, some of which were not pressed on the argument, and are not noticed in the opinion of this court.

*Charles Davis* and *Jacob S. Livingood*, for appellants.

*John Banks*, for appellee.

The opinion of the court was delivered, May 29th 1862, by
READ, J.—It is difficult to follow the order of the specifications of error in this case, because some of the questions which have been argued under the first and fourth assignments are not specifically stated in them, and the second and third assignments under the decree appealed from are not necessarily involved in this decision, unless we should think the decree was erroneous *per se*.

The first objection, that the administrator *de bonis non cum testamento annexo* was improperly appointed, is met by the case of Foster *v.* The Commonwealth, 11 Casey 148.

The second objection, that the administration bond was not in proper form, and did not cover the proceeds of the sale by the administrator of the real estate of the testator, is disposed of

by the case of Hartzell *v.* The Commonwealth, 6 Wright 453, decided at Philadelphia, on the 21st of April last.

The sale of the real estate by the administrator, George Fox, was as effectual as if it had been made by the executors, who undoubtedly had the power to sell, although the year had expired, for that was only directory, and not a condition precedent, and the proceeds having been received by the administrator, the court were right in making the decree of the 6th January 1859, from which this appeal was taken. The *fieri facias* of course was right.

Decree affirmed at the costs of the appellants.