# Hobough, assignee of Truby, *versus* Murphy.

1. Although the effect of a discharge in bankruptcy is to extinguish a pre-existing debt,—not merely to bar the remedy upon it,—yet the moral obligation of the debtor is a sufficient consideration to support an express promise to pay it.

2. A promise to pay a debt from which the debtor has been legally discharged, by a discharge in bankruptcy that will bind the debtor, must be a clear, distinct and unequivocal promise to pay the specific debt without qualification or condition.

October 11th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, J J. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Armstrong county :* Of October Term 1886, No. 2.

This was an action of assumpsit brought by J. H. Truby, who afterward made an assignment to Jacob Hobough for the benefit of his creditors, against James Murphy, upon an alleged promise to pay the amount of his note discharged by a discharge in bankruptcy. Pleas, non assumpsit. Non assumpsit *infra sex annos.*

The facts as they appeared on the trial before NEALE, P. J., sufficiently appear in the opinion of the Supreme Court.

After the plaintiff had closed his case the defendant moved for a compulsory nonsuit which was granted. The same day the plaintiff moved to take off the compulsory nonsuit which motion was overruled by the court.

The plaintiff thereupon took this writ, assigning for error the refusal of the court to take off the compulsory nonsuit.

*J. M. Hunter,* for plaintiff in error.—Where the original indebtedness is the note or specialty of the defendant, the acknowledgment, the identification or specification of the debt and obligation, and a promise to pay, complies with the requirements in cases of this character, without a specification of the amount in dollars and cents. The note and its indorsement show the extent of the defendant's liability, and the specific sum in dollars and cents is ascertainable by a simple calculation : Bolton *v.* King, *supra*; Suter *v.* Sheeler, 10 H., 308; Yaw *v.* Kerr, 11 Wr., 333; Johns *v.* Lentz, 13 P. F. S., 226; Patton's Ex'rs *v.* Hassinger, 19 S., 311; McKenley *v.* O'Kenna, 3 Barr, 369. "The recognition of a debt, or of the instrument or circumstances of indebtedness, accompanied by

a promise to pay . . . . . will prevent the bar of the statute in an appropriate case:" Patton's Ex'rs *v.* Hassinger, *supra.*

*W. D. Patton* for defendant in error.—The writ of error has been prematurely taken. The motion to set aside nonsuit should have been made before the court *in banc* at the next argument day: Haverly *v.* Mercur, 28 P. F. S., 257.

The promise certified to was not so clear, distinct and definite as would have warranted the submission to the jury: Weaver *v.* Weaver, 4 P. F. S., 152; Emerson *v.* Miller, 3 Casey, 278; Herold's Ex'rs *v.* Kentz, 4 Harris, 210; Shaeffer *v.* Shaeffer, 5 Wr., 51; Yoxtheimer *v.* Keyser, 1 Jones, 364.

Mr. Justice CLARK delivered the opinion of the court, November 1st, 1886.

Although the effect of a discharge in bankruptcy is to extinguish a pre-existing debt, not merely to bar the remedy upon it, yet the moral obligation of the debtor is a sufficient consideration to support an express promise to pay it. This is the doctrine of all the cases, and it is unnecessary to cite authorities in support of it.

In the very recent case of Bolton *v.* King, 9 Out., 78, we said that there could not arise a promise by implication, as the mere acknowledgment of a debt could create no liability, if in point of fact no debt existed; and further, that the promise upon such a consideration to pay a debt from which the debtor had been legally discharged, must be a clear, distinct and unequivocal promise to pay the specific debt without qualification or condition.

The rule as to the measure and quality of proof requisite to establish such a promise is certainly, from the nature of the case, not less rigid than has been required to establish a valid acknowledgment or promise to defeat the operation of the Statute of Limitations; and in Burr *v.* Burr, 2 Casey, 284, it is said, to remove the bar of the statute, the acknowledgment must not only be clear, distinct and unequivocal as to the existence of a debt, but that it must also be plainly referable to the very debt upon which the action is based; it matters not where the uncertainty lies, whether in the acknowledgment or in the identification of its existence, it is equally fatal to the plaintiff's recovery. In the case just cited, the words of the acknowledgment were: "Israel, can thee let me have a little interest money on that note which I hold of thine?" He said: "How much would thee like, mother?" She said: "Four or five dollars," and he gave her seven. He said: "Is that sufficient?" She said: "It is for the present." There was no evidence of any note other than the note upon which the

suit was brought; yet it was held that the promise was not specific, as it might have been applied to other notes in existence at the time.

So in Landis *v.* Roth, 16 W. N. C., 309, the evidence was that the debtor said: "I will pay you $600 in thirty days on the note (this note); I will pay you the rest as quick as I can. We will pay you every dollar, if we have to pay it out of our pockets." Yet this court said that the debt was not sufficiently identified. Many other cases might be cited to illustrate the character and quality of proof required in such a case, but those to which we have referred are sufficient for the purpose.

In the case now under consideration, the learned court below was clearly right in giving binding instructions to the jury to find for the defendant. Murphy, the defendant, was discharged in bankruptcy from all debts existing 13th August, 1879. The plaintiff's bond was dated 29th July, 1874, was proved in bankruptcy, and was entitled to share in the distribution of the bankrupt's estate, the debt was therefore discharged by the decree. The alleged promise was made on the 25th or 26th of May, 1881, and this suit was brought 21st January, 1884.

At the arbitration in March, 1885, the plaintiff testified as follows: "Mr. Murphy came to me and told me that he understood I was—or had told parties that he owed me some money, and said that his friends got to hear of it, and came to him and talked to him about it, and he wished I would not talk about it, and he said that he would pay me; he said, I will pay you every cent I owe you, and I told him all right, and that was about all that was said."

If this was the conversation which actually occurred, it lacks all the essential elements of a valid promise; there is not the slightest evidence of the existence of any particular debt—the promise was to pay every cent he owed, when in fact and in law he owed nothing. There was no reference to, and therefore no identification whatever, of the debt in suit. To say, "I will settle with you," or "pay you what I owe you," or "every cent I owe you," are all such forms of admission as are wholly uncertain; such a promise is every way consistent with the belief that nothing is due: Harbold's Executors *v.* Kuntz, 4 Harris, 210.

When the cause came back into the Common Pleas on appeal, and was there brought to trial, the plaintiff modified his statement; he testified as follows:—

Q. State if you had any conversation with Mr. Murphy, the defendant here, after his discharge in bankruptcy, and, if so, what that conversation was, and when it was, with relation to this note?

A. It was in May, 1881.

Q. Where?

A. At J. A. Gault's store, and it was the 25th or 26th May.

Q. What was that conversation?

A. He came to me—

Q. Where?

A. In Gault's store in Kittanning, and he told me that his friends had come in and told him that I had been telling around that he owed me some money, and that he would like I would not tell it; he didn't like to have his friends come in and bother him; that he owed me the note, and would pay every cent of it. He further says: "The note was not present at the time, as I recollect of, and no amount was specified and no time fixed for payment." "I do not say that the $7 was paid on the note; he told me he would get the money, but that it was Mrs. Murphy's, and he would take a due bill for it, but would never ask me for it." The plaintiff further states that prior to the adjudication in bankruptcy, Murphy assigned to him a note on Richardson for $75 to $100, which was subsequently collected and applied on this note; and also a note against one Frank McClymonds, which was to be collected and similarly applied, but that this note proved uncollectible, and is still outstanding.

Now if it be true that Murphy, on the occasion referred to, said that he "owed Truby" the note, and would pay every cent of it, to what note did he refer? No note was exhibited or specifically referred to; no amount stated; no date or other circumstance of identification given. The plaintiff says, that, at the time of the conversation, there was no indebtedness between them except the note in suit; but that will not do; the promise must be specific and determinate, it must in some way carry with it the means of identification, and be referable only to the debt in suit. The promise may have referred to some other note, upon which the plaintiff made no claim; it may have referred to the McClymond's note, or to some other and entirely different transaction; if "the account" or "the note" or "the debt," which a debtor may promise to pay, may be identified by the creditor's assertion, that this was the only indebtedness existing between them at the time, then identification is made so easy under the statute as to render the debtor's place a perilous one indeed; for he may be thereby held for the payment of one debt, when his promise was referable in his own mind to another. Upon this ground it was held in Shaffer v. Shaffer, 5 Wright, 51, that to toll the statute, by evidence of a payment, it must be proven unequivocally that the payment was made on the claim in suit, and when that is not done the jury is not at liberty to find the payment sufficient. In that case the suit was upon a note due February 28th,

[In re Summit Borough.]

1852; the defendant relied on the Statute of Limitations; the plaintiff, to toll the statute, offered in evidence a due bill of the defendant, to the plaintiff, dated May 1st, 1857, for $17.40, " on settlement of a note as interest," together with an indorsement in plaintiff's hand-writing on the back of the note in suit, also dated May 1st, 1857, " Received two years' interest to April 1st, 1857," signed John Shaffer; and although there does not appear to have been any evidence of the existence of any other note, and the due bill and the receipt on the note were of the same date and may have been one transaction, yet this court said:—The due bill acknowledges the defendant's indebtedness to the plaintiff in $17.40 "on settlement of a note as interest." Now, construing this as an admission of indebtedness for interest on a note (the most favorable construction for the plaintiff), it still does not identify the note. It does not point plainly and unmistakably to that in suit. It may have been interest on a different note. It will not answer to say that this was a question for the jury. Not so. The modern authorities are uniform to the contrary. The statute itself does not contemplate any removal of the bar by an acknowledgment, or even a new promise. And although such an effect has been allowed to them by the courts, yet it is now everywhere held, that " where the bar of the statute is sought to be removed by a new promise, the promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate."

We are of opinion that the compulsory nonsuit was properly entered, and the

Judgment affirmed.