## In re KAPLAN & MYERS.

### FREDERICK, VIETOR & ACHELIS v. AMERMAN.

(Circuit Court of Appeals, Third Circuit. April 19, 1917.)

No. 2200.

1. BANKRUPTCY ☞363—RECLAMATION OF PROPERTY—ELECTION.

One who has filed and proved a claim as a creditor for goods sold to a bankrupt may thereafter reclaim the goods upon discovering that they were obtained through fraudulent representations, where the claim recited that it should not be construed as a waiver of the right of the claimant to follow any of its merchandise into whosesoever hands it might be, provided it was delivered through misrepresentation, for the doctrine of election of remedies applies only where the remedies are inconsistent, and the creditor by filing a claim did not preclude itself from subsequent reclamation proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 550–554.]

2. BANKRUPTCY ☞116—PROCEEDINGS—RECLAMATION PROCEEDINGS.

Where petitioners, who directly furnished goods to a bankrupt, obtained them from wholesalers upon paying more than half therefor, a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

reclamation proceeding by petitioners will not be denied, on the ground that petitioners were not the owners of all the goods, for the rights of the wholesalers could readily be protected, and they would be benefited by the reclamation.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

In the matter of the bankruptcy of Kaplan & Myers. Reclamation proceedings by Frederick, Vietor & Achelis, opposed by E. C. Amerman, trustee. From an order of the District Court dismissing the petition (236 Fed. 260), petitioners appeal. Order reversed.

William J. Wilcox, of Scranton, Pa., Percival H. Granger, of Philadelphia, Pa., William A. Wilcox, of Scranton, Pa., and J. Howard Reber, of Philadelphia, Pa., for appellants.

Edwin C. Amerman and Aaron V. Bower, both of Scranton, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In this case we are asked to review a proceeding for reclamation instituted by the firm of Frederick, Vietor & Achelis (hereinafter called the claimants) against the trustee of Kaplan & Myers, bankrupts. The referee sustained the claimants' petition, but the District Court dismissed it. 236 Fed. 260.

[1] The facts are these: Acting on behalf of themselves and of two other mercantile houses, the claimants sold certain goods—or delivered them and thus completed the sale—to the bankrupt firm after January 29, 1915, and before October 30, the day when the involuntary petition was filed. A receiver was appointed forthwith, but the bankrupts contested the petition, and there was no adjudication until December 13. On February 3, 1916, the schedules were filed and the first meeting of creditors was held. At this meeting the claimants filed a proof of debt, but took no part in the meeting. Their proof contained the following paragraph, written in pen and ink:

"That the filing of this claim is not construed as a waiver of the right of said claimant to follow any of their merchandise, in whosesoever hands it may now be, including the receiver in bankruptcy, providing same was delivered thru misrepresentation."

The trustee qualified on February 10 and took possession of the goods and books of the bankrupts. The goods had been open to examination, and perhaps the books also, but it was not until testimony was taken that the probability of previous fraud by the bankrupts in representing their condition became apparent. On February 16 the claimants presented the petition now before us, asserting fraudulent misrepresentation to them concerning the bankrupts' financial condition for the purpose of obtaining goods on credit. The goods reclaimed were afterwards sold, but the proceeds are still in the hands of the trustee subject to the final disposal of the pending petition. The referee found as facts—and the District Judge accepted his findings—that on January 29, 1915, the bankrupts mailed to the claimants a statement purporting to represent their financial condition, and show-

ing a surplus of assets amounting to nearly $50,000, among the assets being outstanding accounts due and owing to the bankrupts amounting to nearly $30,000; that the bankrupts were at that time insolvent; that the statement "was a false and fraudulent misrepresentation and misstatement intended by the bankrupts to secure a false credit"; and, further, "that the claimants relied upon the correctness of this statement, and were induced to part with their goods upon the strength of the misrepresentation."

Upon these facts we are of opinion that the dispute before us is ruled by Thomas v. Taggart, 209 U. S. 391, 392, 28 Sup. Ct. 519, 52 L. Ed. 845. In that case Hall had a speculative account with Berry & Co., the bankrupts, and had deposited certain shares of stock in place of a cash margin. He claimed these shares from the trustee, and was met by the fact that he had already filed a claim for their value against the bankrupt estate. It appeared, however, that his proof contained a stipulation:

"That by filing notice of this claim he does not waive any right of action that he now has to recover possession of said certificates or the value thereof against either of the bankrupts or any person in whose possession they may be found," etc.

And it was therefore held that the claimant had a right to recover the specific shares—the court saying:

"In this claim the essential question is as to the effect of Hall's proof of his claim in bankruptcy as a waiver of his right to recover the shares of stock covered by the receipt. We are of the opinion that, in view of the reservation just made, there was nothing in Hall's conduct amounting to an election to pursue his claim as a creditor in bankruptcy, which now prevents his recovery of the certificates of stock in question. It is true that he voted at the first meeting of the creditors on December 19, 1904, upon an informal ballot for trustee in bankruptcy, and at the formal election of trustees on December 21, 1904, Mr. Hall did not vote, though the referee finds that he participated actively at the meetings held for the election of trustee. We are of the opinion that the reservation of Hall evidenced his intention to hold on to whatever rights he had in his shares of stock, and there is nothing in his conduct which should preclude him, after he had discovered that the shares had been returned to the assignee in bankruptcy, from reclaiming them as his own property."

We see no valid distinction between Thomas v. Taggart and the case now before us. As it seems to us, the referee was justified in coming to the following conclusion:

"In the present case the claimants, within a period of two weeks after their claim had been filed, gaining knowledge of the fraud perpetrated upon them, instituted these reclamation proceedings. In my opinion, the fact that they had theretofore filed their proof of claim without any knowledge of the fraud does not bar them."

We are unable to agree that the claimants made a final election when they filed their proof of debt. So far as appears, they did not then know that they had been the victims of a fraud, and without such knowledge, or notice that would be equivalent thereto, an election was not required. And, when they afterwards learned the facts that seemed to point to the fraud, we do not think they were bound to withdraw their proof of debt while the reclamation proceeding was still unde-

termined. It might be that the apparent fraud could be satisfactorily explained, and in that event they could not reclaim, but must be content with their proof of debt. We see nothing to condemn in this attitude, although of course they must now relinquish their claim under the proof of debt for so much of the goods as have been specifically followed and sold. The rule announced in Thomas v. Taggart seems to us to carry forward the doctrine of election of remedies to this extent: When a creditor may perhaps have two remedies, and pursues one of them without notice or knowledge that he possesses the other, he may protect himself by reserving distinctly a right to follow the other in case he shall subsequently discover the needful facts; and, if he so reserve the right, he need not elect until he knows definitely that both remedies are at his command. Of course, he cannot recover on both; but we think the equities of such a situation are met by requiring him to abandon one remedy before he reaps the benefit of the other. We do not find in Thomas v. Taggart that Hall had abandoned his proof of claim before he sought to reclaim his stock, and the Supreme Court does not state, or imply, that such abandonment would be essential. And of course it must always be remembered that the doctrine of election only applies where the remedies are inconsistent, not where they are cumulative. 9 Rul. Case Law, 956.

It follows, therefore, that the claimants should have been allowed to recover the fund held by the trustee. But before they receive it they should be required to abandon so much of their proof of debt as relates to the value of the goods reclaimed and sold, thus leaving the proof of debt to stand only as to the other goods that were not reclaimed, but had no doubt been disposed of by Kaplan & Myers before the date of the bankruptcy.

[2] The District Court did not pass upon the other question raised by the trustee, namely, whether the claimants had sufficient title to the goods to enable them to maintain the proceeding in their own name. This only applies to part of the goods, for of the other part the claimants were themselves the full owners. As to the former part the facts known are as follows: This merchandise was made up of several consignments shipped from several wholesale houses. The claimants were commercial bankers in New York City, and in some of its details their method of doing business was this: When wholesale houses received orders for the sale and delivery of goods on credit, the claimants would pass on the credit. If this was satisfactory, they would advance to the wholesalers from 60 per cent. to 75 per cent. of the value of the goods, would take the goods into their own custody, and would then ship them in the names of the wholesalers, taking an assignment of the accounts, and stamping the invoices so as to show to the purchasers that the accounts had been assigned, and were payable, to the claimants. The retailers and the general trade were required to render their financial statements to the claimants—as was done by Kaplan & Myers in the present case—and were familiar with this requirement. It also appeared that the relations between the claimants and the wholesalers with whom they dealt were

regulated by a written contract, but this is not in evidence and its terms were not otherwise proved. In the absence of the writing, we think it would be unsafe to pronounce with confidence upon the rights of the respective parties. All we can say is that on the record before us we feel justified in believing that for many purposes the claimants acquired—at least in equity—an interest in the goods themselves that warranted them in taking the step that is now in question. That they used their own name does not seem to be fatal. The wholesalers may perhaps have retained an interest of some kind and to some extent in the goods, but as their interest against a debtor would evidently be identical with the claimants' interest we do not feel disposed to give weight to a rather narrow objection that has no substantial value. If the wholesalers have a right to any part of the fund, they can readily enforce it against the claimants.

The order of the District Court is reversed.