## Messmore's Estate.

*Appeals—Change of legal position—Theory in court below.*

1. Where a party has tried a case on a particular legal theory in
the court below, he cannot, on appeal, alter his legal position there
taken.

*Executors and administrators — Trusts and trustees — Wills —
Power of sale — Agreement for sale of real estate — Discretion —
Deeds—Estoppel—Surcharge—Election of remedies.*

2. Where a person by written agreement holds title to real es-
tate for the widow of a deceased owner, and such person has made
advances for the purchase money to be reimbursed out of the sale
of the land, and the widow by her will appoints him her executor,
and under the will such person had power to sell the land, and the
executor sells and conveys the land after the widow's death in his
own name, without referring in the deed to the testamentary
power, and thereafter, and after he becomes bankrupt, he deals
with the parties interested in the land in such a way as to indicate

that he sold the land under the testamentary power, he is estopped from afterwards claiming that he sold it under the power in the original agreement.

3. In such case the fact that the executor made the deed in his own name without reference to the power in the will, is immaterial.

4. Where a power of sale in a will is executed by deed without reference to the will, it is effective as such, if it would otherwise be a nullity.

5. Where a will fixes a time within which a power of sale is to be exercised, the sale is a matter of discretion before the expiration of such time; thereafter it becomes mandatory.

6. An executor has no right to purchase land of the estate for his own use, and, unless there is some ratification by those interested, after learning of their rights, the sale cannot be sustained.

7. Where a person holds title to real estate in trust for a decedent who appoints him her executor with power of sale, and he subsequently sells the land, and after becoming bankrupt executes a note to the heirs for the proceeds, which he first holds and then delivers to them that they may secure a dividend in the bankruptcy proceedings, and the heirs accept the dividends on agreement by the executor that such dividends should be taken without prejudice to their rights, the executor cannot claim thereafter that the sale was under a power in the original agreement under which he held the land, and not under the power in the will; nor can he claim that he sold the land as his own after having bought it by parol from the heirs.

8. In such case, a claim by the heirs to surcharge the executor as trustee under the will, was in his relief, inasmuch as his total indebtedness in his fiduciary capacity was thereby cut down. The doctrine of election of remedies has no application in such case.

9. The subsequent discharge of the executor in the bankruptcy proceedings did not discharge him from liability for trust funds.

*Executors and administrators — Title to land — Jurisdiction of orphans' court—Establishing title.*

10. Where an executor with power of sale sells land which he held in his own name under an agreement with the testatrix, he cannot claim, when he is called to account for the proceeds of the sale, that the question of title to the land must first be established in the common pleas after issue granted.

Argued March 14, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 3 and 4, March T., 1927, by Josiah V. Thompson, executor and trustee, from decree of O. C. Fayette Co., Dec. T., 1924, No. 38, dismissing exceptions to adjudication, in estate of Emma Messmore, deceased. Affirmed.

Exceptions to adjudication of WORK, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed by DAWSON, P. J. Josiah V. Thompson, executor and trustee, appealed.

*Error assigned,* inter alia, was decree, quoting record.

*W. C. McKean* and *E. C. Higbee,* for appellant.—At the time the coal here in question was sold the power to sell granted by the will had expired: Rieker v. Kaetz, 69 Pa. Superior Ct. 182; Fredericks v. Kerr, 219 Pa. 365; Wilkinson v. Buist, 124 Pa. 253.

There is no evidence that Thompson, in making the three deeds, by which this property was conveyed, intended to execute any power granted by the will: Hupp v. Coal & Coke Co., 284 Pa. 529; Hay v. Mayer, 8 Watts 203; Wetherill v. Wetherill, 18 Pa. 265.

The children of testatrix are precluded by the judgment recovered by them in the court of common pleas: Fowler v. Bank, 113 N. Y. 450; Tasin v. Bastress, 284 Pa. 47.

The discharge of accountant in bankruptcy bars the prosecution of this claim: Kames v. Fox, 14 Phila. 208; Wolcott v. Hodge, 15 Gray (Mass.) 547.

The orphans' court was without jurisdiction to adjudicate the controversy in this cause: Cutter's Est., 286 Pa. 505; Cutler's Est., 225 Pa. 167.

*H. S. Dumbauld,* for appellees.

OPINION BY MR. JUSTICE SADLER, May 24, 1927:

Messmore, with a number of others, secured options on certain coal lands in Greene County. The title to the

land actually purchased was taken by one Tuit. The first named was unable to provide the necessary funds to pay for the undivided interest to which he was entitled, and Thompson agreed to see that the necessary sums were paid, and carry the property for the benefit of Mrs. Messmore, on condition that the grantee should deed the husband's interest to him, for the benefit of the wife, on the payment of the amounts due. On February 25, 1898, Thompson entered into a trust agreement with Mrs. Messmore in which he contracted to hold, for her use, the undivided one-third interest in the land described.

It was provided that the moneys required to pay for the share should be obtained by the trustee, and this was done by taking the notes of the Messmores, which were discounted at the bank of which the former was president. The contract stipulated that Thompson would deed the property to the wife, if all interest, taxes, costs and expenses were paid within ten years, as well as a note upon which he was liable as surety. There was an additional stipulation, as follows: "It is further agreed that if the owners of the coal above described should find a purchaser or sell said coal at a price mutually satisfactory, then the said Thompson has full authority to make a deed for the same," and, after making the proper deductions, the balance, if any, was to be paid to Mrs. Messmore. There was no reimbursement within the period mentioned, but no forfeiture of any of her rights is claimed by the trustee by reason of the failure to repay.

On August 17, 1910, she died, leaving a will with two codicils attached, in which Thompson was named as one of the executors, and letters testamentary were granted to him. This document described the coal land held in trust, amounting, if the tract was divided, to about 169 acres, and directed that her executors (only one qualified) should have entire control thereof "for a period of five years from my death [changed to three by a codi-

cil]," and "my executors shall have power and authority and they are hereby authorized and directed to sell, within said [three] year period, as to them may seem proper and for the advantage of my children, at public or private sale......At the end of said [three] years said executors shall distribute all money in their hands to said children in equal shares......and whatever real estate at that time remains unsold shall be turned over to the control and absolute ownership in equal shares to my said children." She left six survivors, one of whom died in 1912, and another in 1923.

The court below has found that the coal land was sold for a large sum by Thompson in the spring of 1913, prior to the expiration, on August 10, 1913, of the three years named in the will during which a sale was to be made, though the deed, in his own name and not as trustee or executor, was not executed and delivered until November 13th. This conclusion of the court is sustained by competent evidence. After the transfer, he consulted with two of the heirs as to the transaction, and fixed the price to be paid over on the basis of $700 an acre. At the hearing, on exceptions filed to his account as executor, it was his claim that he had then purchased the interests of all the children, on the theory that one, Sarah, stated, in the presence of another heir, that all would be satisfied to dispose of their shares at the price named. On January 12, 1914, he made out a note for $118,222 for the full amount payable to the living children, due one year after date. This paper was executed, as he testified, so that there might be some evidence of the amount he owed, and, at the suggestion of the daughter Sarah, it was kept in his possession. Later, he executed a second obligation, as of the same date, for $100,468.32, having deducted the advances made for Mrs. Messmore in the purchase of the property.

This note remained in his hands until bankruptcy proceedings were instituted against him. Attorneys en-

gaged to look after the interests of the heirs in "the fund in his [Thompson's] hands as executor of their mother's estate," made demand for its possession, so that it might be presented as a claim, and such dividend as was payable, awarded. The demand, represented by the note, was reduced to judgment, and assigned to a creditors committee for collection. Two dividends of five per cent each were declared, but these were not accepted until Thompson authorized the receipt of all dividends "without prejudice to the rights your said clients [the letter is addressed to the attorneys for the heirs] may have to assert any claim they may have against me as executor of Emma Messmore, deceased, or trustee under her will."

A first and final account was filed by the executor of the estate. No debit for the proceeds of the sale of the coal land was included, and it exhibited an apparent overpayment by him. Exceptions were filed, and a hearing had. It was then insisted that Thompson had become the owner of the coal land by purchase from the heirs, and that his deed was made as such grantee. The consideration was alleged to have been the giving of the note of January 12, 1914, which obligation was subsequently reduced to judgment, and presented as a claim in the bankrupt estate. Any title by reason of a failure to repay the advances made for Mrs. Messmore within ten years was disclaimed, and it was denied that the conveyance was by virtue of the power to sell granted in the will. On appeal, an attempt is made to shift this position taken in the court below, it being now insisted there was authority to sell and convey under the original trust, and the transfer was made under that power. This is not the theory on which the case was tried, and appellant cannot now alter his legal position: Saxman v. McCormick, 278 Pa. 268; Consolidated Cigar Co. v. Corbin, 285 Pa. 273; Smith v. Yellow Cab Co., 288 Pa. 85; Weiskircher v. Connelly, 256 Pa. 387.

It will be observed that the agreement of 1898 gave no right to Thompson to dispose of the property, but only

to convey if all the parties in interest found a satisfactory purchaser and agreed to sell. He became a trustee to carry out the expressed wishes of the true owners: Spencer and Newbold's App., 80 Pa. 317. His interest in such contract was to hold the legal title, but the equitable estate was in Mrs. Messmore and the others interested. If he had subsequently acquired a proper conveyance from the beneficiaries, or they had so directed, and the others having undivided shares agreed, he could have sold in his own name. If there was an agreement to purchase the Messmore interest, as insisted in the court below, though the alleged understanding was had with but two of the heirs, it was in parol and could not have been enforced because of the statute of frauds: Lincoln v. Africa, 228 Pa. 546; Smith v. Smith, 77 Pa. Superior Ct. 227.

If his deed of November 13, 1913, is valid, it must be sustained as an exercise of the power given to him as executor by the testatrix's will. The court found the sale was consummated within the three-year limitation named therein; whether so or not, there still remained the right to transfer after the time fixed. Before it had expired the sale was a matter of discretion, thereafter it became mandatory: Fredericks v. Kerr, 219 Pa. 365; Shalter's App., 43 Pa. 83; Rieker v. Kaetz, 69 Pa. Superior Ct. 192; note 31 A. L. R. 1394. It may be that a will evidences an intent that such a power to sell shall not be exercised after a definite period, as where it was given during the lifetime of a widow, and was clearly inserted so that she might secure adequate support (Wilkinson v. Buist, 124 Pa. 253; Fidler v. Lash, 125 Pa. 87), but we are not convinced any such limitation appears here.

Though there is usually found in the deed some reference to the will granting the power (Scott v. Bryan, 194 Pa. 41), yet the conveyance will be effective if the transfer would be a nullity unless made in the exercise of such a grant: Bingham's App., 64 Pa. 345; Hupp v.

Union Coal & Coke Co., 284 Pa. 529. In the latter case it was said (p. 535), "Where a power of sale is executed by deed without reference to the power, it is effective as such if it would otherwise be a nullity; for example, in Lancaster v. Dolan, 1 Rawle 231, 248, the power was to appoint and the donee gave a mortgage without reference to the power. Of similar import are Coryell v. Dunton, 7 Pa. 530; Keefer v. Schwartz, 47 Pa. 503. In Allison v. Kurtz, 2 Watts 185, it was stated that powers executed by deed or will need not refer to the instrument creating the power if the act done cannot take effect but by virtue of the power. A conveyance by an executor with power to sell is construed to be an execution of the power contained in the will, although that power is not recited."

If Thompson was not exercising his right as executor, he could not dispose of the equitable rights of those interested in the will. That he was so acting is evidenced by the credits which he claimed in his account for advances, which included payment of taxes to the time of final sale, surveying bill, and attorney's fees for drawing the deeds. That he considered the holding of the land to be in trust for the estate is shown by the note which he gave as executor on November 21, 1911, the amount of which was deducted as an advance. Such payments are inconsistent with a claim of ownership by virtue of the trust agreement, and are to be considered in determining the true relation of the parties: Gates v. Keichline, 282 Pa. 584. The satisfaction of a legacy for $3,250 as late as 1921 from the funds of the estate also indicates that he was still acting as the personal representative.

It is urged, however, that the giving of the note for the purchase price of the sale to himself was an approval by the heirs, and thus conferred on him the right to convey. He had no right as executor to purchase land of the estate for his own use (Lazarus v. Bryson, 3 Binn. 54; Chorpenning's App., 32 Pa. 315; Gilmore v. Gil-

more Drug Co., 279 Pa. 193), and unless there was some ratification by those interested, after learning of their rights, the sale could not be sustained: Negley v. Lindsay, 67 Pa. 217; Daley v. Iselin, 218 Pa. 515. He was acting as confidential adviser to the children in 1914 when the obligation was given, and was bound to fully disclose all pertinent facts, so that those with whom he was dealing could act intelligently and advisedly. It does not appear that more than one, or possibly two, of the heirs ever knew of the note until the bankruptcy proceedings were instituted. Thompson held possession of it until attorneys for the Messmore's asked that it be delivered, so as to secure, if possible, some dividend.

This proceeding was not inconsistent with the claim against Thompson as executor, but for his benefit, since in this way his liability was reduced. The doctrine of election of remedies has no application unless the claims made are opposed (20 C. J. 2; District Twp. v. Farmers Bank (Iowa), 55 N. W. 342; Farmers Bank v. Wood Bros. Co., 143 Iowa 635, 118 N. W. 282), and not concurrent: 20 C. J. 27. An attempt to enforce liability against an assignee for the benefit of creditors is not inconsistent with the right to enforce personal liability of the assignor: 20 C. J. 19; 7 C. J. 337. It will be noted that the dividends were not accepted for the estate until the executor in writing agreed they should be taken without prejudice. If such a statement had appeared in the proof of claim, there would arise no question as to estoppel by reason of a supposed election: Thomas v. Taggart, 209 U. S. 385; Kaplan's Case, 241 Fed. 459. The reduction of the claim to judgment, and presentation in the bankruptcy proceedings, was in relief of the liability of Thompson, and not alone for the benefit of the heirs. The total indebtedness due by him in his fiduciary capacity was thereby cut down, but his responsibility as personal representative for the unsatisfied balance remained. The estate was entitled to its share of the fund in the hands of the trustee in bank-

ruptcy, and it was proper, if not necessary, that the heirs endeavor to secure the portion awardable. In so doing there was no acceptance of the note in satisfaction of the legal liability of the executor, but an effort made to secure all available assets of the fiduciary, who had been declared bankrupt, thus reducing the amount payable by him, and the dividends received were accepted only with his consent.

The bankrupt was later discharged, and it is claimed this makes impossible further proceedings against him. As to ordinary provable debts this would be true, and no further proceeding could be sustained unless there was a subsequent promise to pay based on the moral obligation to reimburse: Kingston v. Wharton, 2 S. & R. 208; Hobough v. Murphy, 114 Pa. 358. But the misuse of funds by one acting in a fiduciary capacity comes within the exception to the Bankruptcy Act of 1898, as amended in 1926, and a discharge has no such effect on a demand of this character: Johnson v. Parmenter, 74 Vt. 58, 52 Atl. 73; Brown v. Hannagan, 210 Mass. 246, 96 N. E. 714.

It is also suggested that the court is without jurisdiction to surcharge with the proceeds of the sale of this land, and that the right to recover must first be established in the common pleas after issue granted to pass on the disputed question. We cannot agree with this proposition. A mere denial of ownership in the estate, which has the possession of the property, is not enough to make this requisite. What was said by Justice Stewart, in holding such course must be pursued where certain securities are claimed as a gift inter vivos, and not included in the inventory, applies to the present situation: "We need not stop to inquire into the distinction here made [Act June 16, 1836, section 19, P. L. 784] between property in possession of an executor and property for which the executor is accountable. The latter is the more general term and together they embrace all that was owned by the testator at the time of

his death.  In either case ownership by the testator at the time of his death is antecedently implied, and where such ownership can be affirmed with respect to any property, the executor is charged with accountability therefor, whether in or out of his possession, and the jurisdiction of the proper orphans' court over both is complete......If at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists": Cutler's Est., 225 Pa. 167, 170, 171.

We have examined the record presented on this appeal with care, and considered the legal propositions suggested, and are convinced that the findings of fact are supported by competent evidence, and the conclusions of law justified.  The position now taken, and so well argued here by appellant's counsel, is not the theory on which the case was tried below, and cannot be sustained on the record as submitted.  The assignments of error are overruled.

The decree is affirmed at the cost of appellant.