## Kirk Estate

*Richard Henry Klein*, for petitioner.

*H. William Koch*, for respondents.

FORTNEY, J., December 1, 1965.—In this case, petitioner, the First National Bank of Sunbury, executor of the estate of Margaret Burns Kirk, deceased, filed its petition in this court, praying for a declaratory judgment, construing item 11 of the will of Margaret Burns Kirk, who died May 6, 1962, testate, a resident of the Borough of Watsontown, Northumberland County, Pa. Her will was duly probated on May 11, 1962,

and letters testamentary were issued to The First National Bank of Sunbury, petitioner, which is now duly qualified and acting as executor.

This matter came before the court on petition and answer, and since all the facts in the petition are admitted, the court will proceed to a decision in this matter without the necessity of testimony being taken. The fact that there is a dispute between the parties regarding the conclusions of law in the petition presents the issue to the court as a purely legal problem.

As the admitted facts appear in the petition, petitioner, as executor, sold a property at 118 North Main Street, Watsontown, Pa., to Bert R. Fogelman and Margaret E. Fogelman, his wife, for the sum of $4,500 at private sale, and delivered a deed therefor, which deed was dated September 28, 1965, and was recorded in the office for the recording of deeds and mortgages in and for Northumberland County, Pa., on September 28, 1965, in deed book 450, page 569. The deed contained the usual executor's warranty stating that the executor had not done, committed, or knowingly or willingly suffered to be done or committed, any act, matter or thing whatsoever whereby the premises are impeached, charged or encumbered in any manner.

The issue before the court is whether the bank, as executor, had power to convey the said real estate to Bert R. Fogelman and Margaret E. Fogelman, his wife, for the sum of $4,500. The problem is raised by the fact that in item 11 of the will of Margaret Burns Kirk, she provides that her executor shall sell her real estate, but then adds the following sentence:

"The selling price of any real estate which I may still own at the time of my death is to be not less than three times the 1931 assessed value of this property. The selling price of this real estate over and above this figure is to be left to the discretion and good judgment of the said Trust Co. The money realized from the sale of this

real estate after necessary expenses connected with its sale have been deducted is to become a part of the corpus or principal of my estate".

The petition states that the amount of the real estate assessment of the property in question in 1931 was $1,900. Three times this assessment is obviously $5,700, which amount is more than the $4,500 consideration for which the property was sold by the bank, as executor, to the Fogelmans.

The auditor, Leonard R. Apfelbaum, Esq., of Sunbury, who was appointed by the court to pass on matters raised by exceptions to the account, in his report discussed this problem, and his comments in this regard are as follows:

"Precatory words have been defined as words in a will 'expressive of desire, recommendation and confidence': Pennock's Estate, 20 Pa. 268. The statement that the testatrix desired her real estate to be sold by the executor is mandatory, but the price for which it might be sold being 'not less than three times the 1931 assessed value', in the opinion of your Auditor, is precatory. The testamentary document was written thirty-one years prior to the testatrix's demise, and while the trustee is not in a position to dispose of the real estate until such time as the antique furniture and furnishings are disposed of, at such time as the real estate is sold, we believe that the test of reasonableness should be applied, and the trustee should get the best price or prices obtainable for said real estate. These prices may well be in excess of the 1931 assessed value, but we must take judicial notice of the fact that all of the real estate in Northumberland County was reassessed in recent years and carry different values than the value in the mind of the testatrix at the time of the writing of her will".

No exceptions were filed by any party interested to that part of the auditor's report above quoted, refer-

ring to the power of sale in item 11 of the will of Margaret Burns Kirk, but the attorney for Bert R. Fogelman and Margaret E. Fogelman contends that the order of court appointing the auditor did not specifically require him to pass on this particular question.

Since there is an actual controversy existing between the contending parties, and it is a challenge or denial of the effect of the deed given by petitioners as executor of the estate of Margaret Burns Kirk, the court has power and authority to determine the question of the power of sale of the bank, since it arises in the administration of an estate and a trust and includes a question of the construction of a will: Section 1, Act of July 25, 1963, P. L. 305, 12 PS §836.

It is the duty of an executor to secure the greatest amount for an estate that is obtainable from the liquidation of assets, and in order to permit an executor to comply with this duty, its power to convert cannot be hampered by provisions such as the one here in question.

It has been held that a time limitation is directory only and that an executor has power to sell even though the time fixed in the will may have expired: Fredericks v. Kerr, 219 Pa. 365; Shalter and Ebling's Appeal, 43 Pa. 83.

In the case of Anderson v. Ryland, 232 Ark. 335, 336 S. W. 2d 52 (1960), the Supreme Court of Arkansas permitted trustees to deviate from the terms of the trust by selling land and purchasing other property located elsewhere in the city. The trust had been created in 1889 when settlor placed lands and funds in trust to establish and maintain recreational facilities on the land. The deed provided that the trustees should have no power to sell, convey or in any way encumber the property or any part thereof. In permitting the sale of the land contrary to the prohibition in the will, the court found that the retention of the property

would thwart the basic purpose of settlor, because of changes in the surrounding premises. The court held that the dominant purpose of settlor was to improve the citizens physically, mentally, morally and spiritually by providing a place of instruction and amusement. The important question is to determine testator's dominant purpose.

It is important to note that in the will of Margaret Burns Kirk, there are a number of charitable bequests, and whenever these appear, the court tends to infer a general, rather than a specific, intent to testatrix, on the ground that testatrix must have anticipated changing circumstances, and the absence of provisions for alternative disposition also shows a general intent in this regard. Margaret Burns Kirk made no provisions for what should happen if the value of the property fell below three times the 1931 assessment, and the best evidence of the changed conditions is the fact that the bank, as petitioner, secured an affidavit from a real estate appraiser, David E. Menach, who is familiar with the property, and who placed a present day market value on the property of $4,500. His affidavit as an appraiser is attached as exhibit A to the bank's petition, and, since there is no denial of this fact in the answer filed, the court can consider that this is an admitted fact.

For example, in the case of Curran's Estate, 310 Pa. 434 (1933), a bequest was made to establish a foundation, the income of which was to be used to promote higher education of females, and it was provided that the institution had to be located in the City of Philadelphia or adjacent thereto. The court, after due consideration, found that the only college that was properly fitted for this was a college 156 miles away from Philadelphia, and this raised the question of whether the fact that the college was not in or adjacent to Philadelphia made the recipient ineligible. The court con-

sidered the improvements in transportation and communication since the testamentary deed in 1880, and found that the change had made distance less important. The court was convinced that testator's dominant intent was to benefit a certain type of college, and that the location thereof was by comparison incidental.

In Rogers v. Attorney General, 347 Mass. 126, 196 N. E. 2d 855, Massachusetts (1964), a testator made a gift of home and $20,000 to establish a home for aged women not less than 65 years of age who neither smoked nor drank. The court in Massachusetts ordered the home sold and the proceeds added to the trust fund, and distributed the corpus to the Lawrence Home for Aged People without mentioning the restrictions as to smoking or drinking. In this case, the court looked to the general intent of testator, rather than to any specific facts limiting that intent.

In Village of Hinsdale v. Chicago City Missionary Society, 375 Ill. 220, 30 N. E. 2d 657 (1940), settlor deeded certain lots to the Village of Hinsdale in trust for the construction and maintenance of a library. It was expressly provided in the trust instrument that one of the lots was to be reserved as a site for the library. There was not sufficient money in the trust to build a new building, and trustees began to use an existing building and sought permission to use that building instead of building one on the lot in question. The court granted the request.

In Borschers v. Taylor, 83 N. H. 564, 145 Atl. 666 (1929), testator left $10,000 in trust and directed that the income was to be used to maintain a high school in the town of Salem, providing that the school was kept within 100 rods of the town hall. The town constructed the school 283 rods from the town hall, and a dispute arose as to whether the town could receive the income from this trust. The court held that the location of the school was not of the essence of the

gift and permitted the income to be used for the building, which was located further than directed from the town hall.

In Reeser Estate, 1 D. & C. 2d 731 (1954), a trust was established for the education of a boy who was a member of the Presbyterian Church in Reading, Pa., and who wanted to be a doctor. After 20 years, no one applied for the trust funds. The trustees asked permission to expend the funds for the education of a girl who wanted to be a doctor. The court determined that testator had a broad charitable intent, and construed the provision as indicating that his basic wish was to provide for a young person and, therefore, allowed the money to be used for the education of a female.

With a strictly charitable trust, the right of the court to change the power of the trustee has been known as the cy pres doctrine. However, where the purposes are a mixture of charitable purposes and bequests to members of the family, a more limited rule, which is known as the doctrine of deviation, is applied by the courts. This is set forth in section 381 of Restatement, Trusts, 2d ed., published in 1959 by the American Law Institute. It is there stated that the court will direct or permit the trustee of a charitable trust to deviate from the terms of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust, and the doctrine of deviation is applied to private trusts: Scott on Trusts, §§165-167.2 (2d ed.).

The doctrine of deviation is illustrated by a prohibition of the sale of the property. The court, in such a case, has the power to permit a sale if it does not change settlor's purpose, but is only an administrative change not affecting the specific intent of settlor.

The auditor, in this case, stated that, in his opinion, the direction limiting the amount for which the property could be sold was only precatory, citing Pennock's Estate, 20 Pa. 268.

The court concludes that the general intent of testatrix in this case was to benefit those parties who would receive bequests under the will, and that the changing economic situation, whereby the property is no longer worth three times the 1931 assessment, must be taken into consideration, and petitioner, as executor and trustee, had the power to sell the property for the best price obtainable, regardless of the aforesaid limitation.

The court, therefore, enters the following

## ORDER

And now, to wit, December 1, 1965, the within petition and answer having been presented to the court for decision, and all the facts being admitted by the parties as appears by the pleadings, judgment is hereby entered in favor of petitioner, the First National Bank of Sunbury, executor and trustee under the will of Margaret Burns Kirk, deceased, who died May 6, 1962, testate, a resident of the Borough of Watsontown, Northumberland County, Pa., and against respondents, Bert R. Fogelman and Margaret E. Fogelman, his wife, construing and interpreting item 11 of the will of Margaret Burns Kirk, deceased, dated August 6, 1931, and duly probated in Northumberland County on May 11, 1962.

The court hereby confirms the title conveyed by the First National Bank of Sunbury, petitioner, as executor to Bert R. Fogelman and Margaret E. Fogelman, his wife, for $4,500, and decrees that the sale was within the power of the bank as executor under the said will, and that any limitation of the amount for which the property can be sold, as set forth in item 11 of the will of Margaret Burns Kirk, is precatory only and not binding upon the bank as executor.

It is further directed that a certified copy of this order shall be recorded in the office of the recorder of deeds and mortgages in and for Northumberland County, Pa., and indexed in the name of the First National Bank of Sunbury, executor of the estate of Margaret Burns Kirk, as grantor, and the names of Bert R. Fogelman and Margaret E. Fogelman, his wife, as grantees. Costs to be paid by respondents.